JOURNAL ENTRY and OPINION
{¶ 1} Appellant State of Ohio appeals the decision of the trial court granting appellee Curtis Sims's motion to suppress. The State assigns the following error for our review:
 {¶ 2} "I. The trial court erred in granting appellee's motion to suppress evidence."
 {¶ 3} Having reviewed the record and the legal arguments of the parties, we affirm the trial court's judgment. The apposite facts follow.
 {¶ 4} On April 4, 2003, the Cuyahoga Grand Jury indicted appellee Curtis Sims for two counts of drug possession. Curtis filed a motion to suppress and on October 2, 2003, the trial court conducted a hearing.
 {¶ 5} At the hearing, only Officer Brian Carney testified. The testimony disclosed the following:
 {¶ 6} When Brian Carney and his partner observed a row of vehicles on Continental Avenue illegally parked at 5:00 a.m., they planned to issue parking tickets to each vehicle. They approached the first vehicle parked in front of 11825 Continental Avenue, a well-known drug house. Carney, in the past made several drug arrests at that house. He described it as a "very horrible house."
 {¶ 7} When they approached the car, Curtis Sims exited the house and entered on the passenger side of the vehicle in question. Carney's partner proceeded to issue the driver a ticket and Carney approached the passenger side. He observed Sims "making all kinds of furtive movements and reaching into his left front pocket." Carney stated "I thought he might have been reaching for a gun since guns and drugs go together." He asked Sims to show his hands. Sims did not and Carney ordered him out of the car. In response to the prosecutor's question "what do you do with him," Carney stated "I patted him down for safety, officer safety reasons to see if he had a gun on him." While patting him down, Carney felt the "crack cocaine pipe" in Sims's left front pocket. He arrested Sims for violating state drug laws.
 {¶ 8} On cross examination, Carney responded as follows:
 {¶ 9} What kind of car was it?
 {¶ 10} I can't remember that. It was in February.
 {¶ 11} Well, did you put it in your report the car that you pulled him out of?
 {¶ 12} No, that was my mistake. I should have done that.
 {¶ 13} That was your mistake?
 {¶ 14} Yes, sir.
 {¶ 15} It is a mistake because there was no basis for stopping Mr. Sims?
 {¶ 16} We weren't trying to stop Mr. Sims. We were issuing parking tickets.
 {¶ 17} Carney maintained he thought Sims was reaching for a weapon. Later, defense counsel asked if any other crimes occurred other than the parking violations and Carney replied, none.
 {¶ 18} Defense counsel asked Carney about Sims's hands. Carney replied he observed nothing. Carney admitted that Sims's behavior was not usual, "just made him very nervous."
 {¶ 19} The following exchange took place:
 {¶ 20} What is this jumping around you claim he was doing?
 {¶ 21} Just reaching into his left pocket when I approached the vehicle.
 {¶ 22} The officer then testified the vehicle was not under surveillance. The officer ordered Sims to show his hands and when he failed to do so, he was ordered out of the car and searched.
 {¶ 23} After the hearing, the trial court granted Sims's motion and the State appealed. The State argues the trial court committed reversible error when it granted Sims's motion. We disagree.
 {¶ 24} The trial court held that the initial intrusion by the officers was unjust and unreasonable and in violation of theFourth Amendment to the United States Constitution. The trial court felt the initial intrusion excessive. The trial court found the officers were not approaching the vehicle because of drugs or weapons, but were issuing parking tickets. This reach beyond the traffic ticket seemed unreasonable to the Court.
 {¶ 25} We, too, are concerned with the initial intrusion and are not persuaded by the officer's furtive movement explanation. A police officer is not obliged to seize every person he sees or questions on the street.[1] We acknowledge that the Ohio Supreme Court historically has held that the standard of review is totality of circumstances and it is the officer's belief of wrongdoing.[2] However, Terry v. Ohio[3] requires the officer to articulate a reasonable set of facts and circumstances to justify the intrusion. The officer must act reasonably.
 {¶ 26} Here, the officer saw Sims exit a known drug house and enter the vehicle. The officer's partner was ticketing the driver. From these facts, it appears that the sole reason for focusing on Sims was the fact that he had exited a known drug house in the early morning.
 {¶ 27} The officer does state that this was a dangerous place; he suspected drugs and drugs and weapons go together. Consequently, Sims jumping around in the vehicle led him to seize him for purposes of a pat-down search. The trial court felt the officer's reaction unreasonable in light of the totality of the circumstances. The trial court pointed out that the officer was issuing traffic tickets and not investigating. We agree with the trial court. As such, the intrusion was unreasonable and we do not reach the "plain feel" exception raised in Minnesota v.Dickerson.[4] Accordingly, we overrule the prosecutor's assigned error.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Ann Dyke, J., concurs;
 Frank D. Celebrezze, Jr., J., Dissents,
 (See attached Dissenting Opinion.)
[1] Sibron v. New York (1968), 392 U.S. 40.
[2] State v. Bobo (1988), 37 Ohio St.3d 177.
[3] (1968), 392 U.S. 1.
[4] (U.S. 1993), 508 U.S. 366.